E-filing

**FILED**

DEC 2 9 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

QUILLIE L. HARVEY, JR.,

      Plaintiff(s),

      vs.

ARNOLD SCHWARZENEGGER, et al.,

      Defendant(s).

No. C 07-1244 CRB (PR)

ORDER GRANTING
DEFENDANTS' MOTION FOR
DISMISSAL/SUMMARY
JUDGMENT

(Docket # 65)

      Plaintiff, a prisoner at Salinas Valley State Prison ("SVSP") and frequent litigant in federal court, filed a pro se complaint under 42 U.S.C. § 1983 alleging various violations of his constitutional rights while incarcerated at SVSP. The court screened the complain pursuant to 28 U.S.C. § 1915A and recognized four claims under § 1983: (1) improper classification, (2) deprivation of outdoor exercise, (3) mail tampering and (4) deliberate indifference to serious medical needs. Aug. 29, 2007 Order at 2. The court dismissed plaintiff's allegations regarding an inadequate administrative appeals system and dismissed Governor Schwarzenegger and Secretary James Tilton. Id. All other named defendants were ordered served. Id. at 3.

      Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state claim upon which relief can be granted. The court granted the motion with respect to the claims regarding improper

classification, deprivation of outdoor exercise and deliberate indifference to serious medical needs, and denied the motion with respect to the mail-tampering claim. July 21, 2008 Order at 5. The improper-classification claim was dismissed without leave to amend, but the claims regarding deprivation of outdoor exercise and deliberate indifference to serious medical needs were dismissed with leave to amend. Id. The court also dismissed defendants Sotelo, Hedgpeth, Vera and Medina. Id.[1]

Plaintiff filed a First Amended Complaint ("FAC"), which defendants requested the court screen pursuant to 28 U.S.C. § 1915A. The court screened the FAC and found that it stated a cognizable § 1983 claim for mail tampering against defendant L. Lafferty and a cognizable § 1983 claim for deliberate indifference to serious medical needs against defendants Nguyen, M. S. Evans, Charles Lee, S. M. Rodriguez, M. Mendez and J. Ippolito. Oct. 31, 2008 Order at 2. All other claims and defendants were dismissed. Id.

Defendants now move for dismissal of plaintiff's claims against defendants Rodriguez, Mendez and Ippolito under Federal Rule of Civil Procedure 12(b) on the ground that plaintiff failed to exhaust available administrative remedies as to said claims before filing suit as required by 42 U.S.C. § 1997e(a). Additionally, defendants move for summary judgment on plaintiff's claims against defendants Lafferty, Nguyen, Evans and Lee under Federal Rule of Civil Procedure 56 on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Defendants Lafferty, Nguyen, Evans and Lee also claim that they are entitled to qualified immunity. Plaintiff has filed an opposition and defendants have filed a reply.

---

[1]Defendant Younce was dismissed after the court was informed of his death. See Sept. 30, 2008 Order at 1.

**DISCUSSION**

A.    Standard of Review

Nonexhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense that should be treated as a matter of abatement and brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citations omitted). In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. If the court concludes that the prisoner has not exhausted California's prison administrative process, the proper remedy is dismissal without prejudice. Id. at 1120.

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support

3

1  |  the nonmoving party's case." Id.

2  |  Once the moving party meets its initial burden, the nonmoving party must

3  |  go beyond the pleadings and, by its own affidavits or discovery, "set forth

4  |  specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

5  |  56(e). If the nonmoving party fails to make this showing, "the moving party is

6  |  entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

7  |  B.    Analysis

8  |        1.    Motion for dismissal for nonexhaustion

9  |  The Prison Litigation Reform Act of 1995("PLRA") amended 42

10 |  U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to

11 |  prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

12 |  prisoner confined in any jail, prison, or other correctional facility until such

13 |  administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

14 |  Although once within the discretion of the district court, exhaustion in prisoner

15 |  cases covered by § 1997e(a) is now mandatory. Porter v. Nussle, 534 U.S. 516,

16 |  524 (2002). All available remedies must now be exhausted; those remedies

17 |  "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"

18 |  Id. (citation omitted). Even when the prisoner seeks relief not available in

19 |  grievance proceedings, notably money damages, exhaustion is a prerequisite to

20 |  suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a

21 |  prerequisite to all prisoner suits about prison life, whether they involve general

22 |  circumstances or particular episodes, and whether they allege excessive force or

23 |  some other wrong. Porter, 534 U.S. at 532. PLRA's exhaustion requirement

24 |  requires "proper exhaustion" of available administrative remedies. Woodford v.

25 |  Ngo, 548 U.S. 81, 93 (2006).

26 |  /

27 |

28 |                                                4

1   The California Department of Corrections and Rehabilitation ("CDCR")

2   provides its prisoners the right to appeal administratively "any departmental

3   decision, action, condition or policy perceived by those individuals as adversely

4   affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides

5   them the right to file appeals alleging misconduct by correctional officers and/or

6   officials. Id. § 3084.1(e). In order to exhaust available administrative remedies

7   within this system, a prisoner must submit his complaint on CDCR Form 602

8   (referred to as a "602") and proceed through several levels of appeal: (1) informal

9   level grievance filed directly with any correctional staff member, (2) first formal

10   level appeal filed with one of the institution's appeal coordinators, (3) second

11   formal level appeal filed with the institution head or designee, and (4) third

12   formal level appeal filed with the CDCR director or designee. Barry v. Ratelle,

13   985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, §

14   3084.5). A final decision from the director's level of review satisfies the

15   exhaustion requirement under § 1997e(a). Id. at 1237-38.

16   Defendants Rodriguez, Mendez and Ippolito argue that plaintiff failed to

17   exhaust properly through the final director's level of review his claims against

18   them. The court agrees.

19   Plaintiff alleges that defendant Nguyen was deliberately indifferent to his

20   serious medical needs because Nguyen did not write him a "soft shoe chrono"

21   (i.e., medical permission to wear soft shoes) until March 22, 2006. FAC ¶¶ 19-

22   36. Plaintiff also alleges that after the chrono was finalized on March 25, 2006,

23   defendant property officers Rodriguez and Mendez ignored the chrono that

24   authorized him to have personal "soft shoes" and that their supervisor, defendant

25   Ippolito, "failed to cure the situation" by noting that "it's only been a couple of

26   weeks." Id. ¶¶ 37-43.

27

28   5

On March 6, 2006, plaintiff submitted appeal SVSP 06-02356 alleging inadequate medical care for his feet because medical staff had not granted him a soft-shoe chrono. The appeal of course makes no mention of any property officers ignoring his soft-shoe chrono because no chrono was issued until March 25, 2006. Put simply, appeal SVSP 06-02356 does not concern the same subject matter as his claims against defendant property officers Rodriguez, Mendez and Ippolito. See O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (administrative remedies not exhausted where inmate appeal does not have same subject and same request for relief as claim asserted in complaint).

Plaintiff argues that appeal SVSP 06-02356 exhausted his claims against Rodriguez, Mendez and Ippolito because plaintiff added new allegations concerning these defendants' actions/omissions at the first formal level of review. But the record makes clear that plaintiff's attempts to add the new allegations at the first formal level of review of SVSP 06-02356 were rejected on the grounds that, under the applicable procedural rules, inmates must file separate appeals for each grievance and may not change the appeal issue from one level of review to another. See FAC ¶ 37, Ex. B at 3, 8-11; Medina Decl. Ex. B; Medina Further Decl. ¶ 3. Not surprisingly, plaintiff resubmitted appeal SVSP 06-02356 to the first formal level of review without the staff misconduct allegations against Rodriguez, Mendez and Ippolito, and proceeded all the way to the final director's level review without them. Appeal SVSP 06-02356 did not properly exhaust plaintiff's claims against Rodriguez, Mendez and Ippolito. Cf. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) (proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules).

/

6

1

2

3

4

5

6

7

8

9

10

CDCR's records show that plaintiff did not exhaust his claims against Rodriguez, Mendez and Ippolito via any other administrative appeals. But in his opposition papers, plaintiff alleges that he attempted to do so when, on April 5, 2006, he handed an appeal concerning the defendant property officers to correctional officer Reyes for filing with the appeals coordinator.[2] In support, he attaches exhibits C and E to his declaration in support of his opposition. Exhibit C contains a 602 on which plaintiff appears to have written allegations against Rodriguez and Mendez. But, unlike the appeals he attached to his FAC, this purported appeal does not bear any stamps or other evidence of receipt by the appeals coordinator or any other prison official.

11

12

13

14

15

16

17

18

19

20

21

22

23

Exhibit E contains a letter dated July 30, 2006 from plaintiff to appeals coordinator Medina asking about the status of "a staff complaint on three officers for withholding medical" that he allegedly "sent" Medina on April 5, 2006. Pl.'s Decl. Ex. E. Medina responded by reminding plaintiff that he must follow procedure and submit an Inmate Request for Interview (Form GA 22) describing the information sought. There is no evidence that plaintiff submitted a Form GA 22 and/or made any attempts to resubmit to Medina the staff complaint against the defendant property officers. On this record, it cannot be said that plaintiff properly exhausted available administrative remedies, or gave CDCR a fair opportunity to correct its own mistakes, before haling Rodriguez, Mendez and Ippolito into federal court. See Woodford, 548 U.S. at 89, 90-91. The claims against Rodriguez, Mendez and Ippolito must be dismissed without prejudice. See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).

24

25

26

27

[2] The informal level of review is waived for grievances concerning "alleged misconduct by a departmental peace officer." Cal. Code Regs. tit. 15, § 3084.5(a)(3)(G).

28

7

2. Motion for summary judgment

Defendants move for summary judgment on plaintiff's claims against defendants Lafferty, Nguyen, Evans and Lee, and argue that they are entitled to qualified immunity from damages. Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[3]

a. Mail Tampering

Plaintiff alleges that on January 24, 2006 he submitted an

---

[3]Although the Saucier sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

administrative appeal in which he alleged that defendant Lafferty and the mail room staff had "tampered" with his mail. FAC ¶ 14. Plaintiff namely noted in the 602 that his "legal mail" had been opened outside of his presence and that holiday cards postmarked December 21 and 22, 2005 were not delivered to him until January 17, 2006. Id. Ex. A. Plaintiff further alleges that Lafferty responded to the 602 by sending plaintiff's mail to the wrong cell and, along with "other unidentified mail room staff," opening his legal mail outside of his presence. Id. ¶ 15.

Prison officials may institute procedures for inspecting "legal mail," i.e., mail sent between attorneys and prisoners. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974) (incoming mail from attorneys); see also Royse v. Superior Court, 779 F.2d 573, 574-75 (9th Cir. 1986) (prison officials may inspect mail sent by prisoner to the courts). But the opening and inspecting of "legal mail" outside the presence of a prisoner may have an impermissible "chilling" effect on a prisoner's First Amendment right to petition the government. See O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996) (citing Laird v. Tatum, 408 U.S. 1, 11 (1972)).[4] If the prisoner demonstrates a chilling effect, prison officials must establish that legitimate penological interests justify the policy or practice. See id. at 327 (mail policy that allows prison mail room employees to open and read grievances sent by prisoners to state agencies outside prisoners' presence reasonable means to further legitimate penological interests).

Lafferty claims she is entitled to summary judgment because she did not work in SVSP's mail room during the relevant time period. Lafferty sets forth

---

[4]But cf. Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (prison officials may open and inspect mail to prisoner from courts outside prisoner's presence because mail from courts, as opposed to mail from a prisoner's lawyer, is not "legal mail").

9

evidence showing that she was on medical leave from SVSP August 30, 2005 through September 8, 2005 and November 18, 2005 through June 8, 2006. According to Lafferty, plaintiff has set forth no evidence showing that she actually and proximately caused the deprivation of plaintiff's First Amendment rights of which he complains. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). The court agrees.

In support of his mail tampering claim, plaintiff submits a note Lafferty allegedly wrote to him on September 9, 2005. The note reassures plaintiff that the mail room sends him his magazines "the same day they arrive from the post office." Pl.'s Decl. Ex. G at 2. The note does not contradict Lafferty's evidence that she was on medical leave from August 30, 2005 through September 9, 2005 or show a genuine issue for trial on plaintiff's claim that Lafferty violated his First Amendment right to petition the government and/or to receive mail. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).

Plaintiff also submits a second note Lafferty allegedly wrote to him on November 18, 2005. That note reassures plaintiff that the mail room sends him his newspapers "on the same day we get them." Pl.'s Decl. Ex. G at 3. The note does not contradict Lafferty's evidence that she was on medical leave from November 18, 2005 through June 8, 2006 – Lafferty worked approximately one hour on November 18, 2005 before she saw her doctor and he put her on immediate medical leave until she returned to SVSP in June 2006. Nor does the note show a genuine issue for trial on plaintiff's claim that Lafferty violated his First Amendment right to petition the government and/or to receive mail. See Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 323.

Specifically in support of his claim that Lafferty violated his First Amendment rights by opening his legal mail outside of his presence, plaintiff

10

1
2
3
4
5
6
7

points to page 29 of exhibit A of his FAC. The page numbered 29 in exhibit A to the FAC is a photocopy of an envelope postmarked January 17, 2006, which has an attorney's name in the return address and is stamped "Opened in Error." FAC Ex. A at 29. But there is no genuine issue for trial on plaintiff's claim that Lafferty opened the envelope. See Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 323. The uncontroverted evidence shows that Lafferty was on medical leave at the time the envelope was received and opened.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff also submits a photocopy of an envelope from the American Bar Association postmarked September 12, 2005, with a handwritten note saying, "Opened in error, not read," and signed "L. Lafferty." Pl.'s Decl. Ex. A at 20. Lafferty concedes that the note appears to be in her handwriting, but suggests that the piece of mail at issue was opened in error and promptly resealed and initialed without reading, pursuant to protocol. Plaintiff's conclusory allegations that it was intentionally opened and presumably read are insufficient to create a triable issue of fact. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (conclusory allegations insufficient to defeat summary judgment). The court is satisfied that the instant incident of mail mishandling without any evidence of improper motive or resulting interference with the right to counsel or access to the courts does not give rise to a constitutional violation. See Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990); see also Bach v. Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974) (isolated incident of mail mishandling insufficient to state claim under § 1983). Lafferty is entitled to summary judgment (and qualified immunity) on plaintiff's mail tampering claim.

24

        b.    Medical Needs

25
26
27

Plaintiff alleges that defendant Nguyen was deliberately indifferent to his foot pain because Nguyen unnecessarily delayed for nearly

28

11

1    seven months (from August 25, 2005 to March 22, 2006) writing an
2    accommodation chrono authorizing plaintiff to wear soft shoes in the
3    Administrative Segregation Unit ("ASU").

4        Deliberate indifference to serious medical needs violates the Eighth
5    Amendment's proscription against cruel and unusual punishment. Estelle v.
6    Gamble, 429 U.S. 97, 104 (1976). A "serious medical need" exists if the failure
7    to treat a prisoner's condition could result in further significant injury or the
8    "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050,
9    1059 (9th Cir. 1992) (citing Estelle, 429 U.S. at 104), overruled in part on other
10   grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.
11   1997) (en banc). A prison official is "deliberately indifferent" if he knows that a
12   prisoner faces a substantial risk of serious harm and disregards that risk by failing
13   to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837
14   (1994).

15       Negligence is not enough for liability under the Eighth Amendment. Id. at
16   835-36 & n.4. An "official's failure to alleviate a significant risk that he should
17   have perceived but did not, . . . cannot under our cases be condemned as the
18   infliction of punishment." Id. at 838. Instead, "the official's conduct must have
19   been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the
20   constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.
21   1998) (citing Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). Prison officials
22   violate their constitutional obligation only by "intentionally denying or delaying
23   access to medical care." Estelle, 429 U.S. at 104-05.

24       A difference of opinion between a prisoner-patient and prison medical
25   authorities regarding treatment does not give rise to a § 1983 claim. Franklin v.
26   Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing
27
28                                      12

1  more than a difference of medical opinion as to the need to pursue one course of

2  treatment over another is generally insufficient to establish deliberate

3  indifference. Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004);

4  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). In order to prevail on a

5  claim involving choices between alternative courses of treatment, a prisoner-

6  plaintiff must show that the course of treatment the doctors chose was medically

7  unacceptable under the circumstances and that they chose this course in

8  conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F.3d

9  at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

10  Nguyen claims he is entitled to summary judgment because the undisputed

11  facts show that he consistently and adequately responded to plaintiff's foot pain

12  and wrote him a soft-shoe chrono immediately after receiving the expert opinion

13  of a podiatrist that a soft-shoe chrono was recommended for plaintiff. Nguyen

14  argues that no reasonable juror could find that he was deliberately indifferent to

15  plaintiff's serious medical needs under the circumstances. In support, Nguyen

16  submits declarations and documentary evidence showing the following:

17  During the relevant time period of August 2005 to March 2006, Nguyen

18  worked at SVSP as a contract physician and saw plaintiff several times for

19  chronic shoulder pain and foot pain. Plaintiff's medical records specifically show

20  that Nguyen saw plaintiff on approximately six occasions in these seven months,

21  and that Nguyen recommended or prescribed pain medication, x-rays, an MRI

22  (magnetic resonance imaging) and physical therapy – all of which plaintiff

23  received. Nguyen Decl. ¶ 4, Ex. A. Nguyen did not write an accommodation

24  chrono for plaintiff to wear soft shoes in the ASU until such a chrono was

25  recommended by a podiatrist in March 2006, however.

26  /

27

28                                                                                  13

1
2
3
4
5
6
7
8
9
10
11

While working at SVSP, Nguyen was aware of a memo from defendant Chief Medical Officer Dr. C. Lee concerning the issuance of comprehensive accommodation chronos to allow inmates to have personal soft shoes. Id. ¶ 5. This memo went into effect before Nguyen started working at SVSP. Id. While at SVSP, Nguyen understood the soft-shoe memo to mean that inmates did not need medical authorization to wear soft shoes. Id. It was his understanding that inmates had previously not been allowed to wear soft shoes, but that this rule had been changed and so they no longer needed medical authorization for soft shoes. Id. It was also his understanding that inmates in the ASU were generally not allowed to have soft shoes, however. Id. During the period Nguyen saw plaintiff, Nguyen believed plaintiff to be housed in the ASU. Id.

12
13
14
15
16
17
18

Lee issued the soft-shoe memo in his capacity as Health Care Manager to all staff concerning the policy for issuing soft-shoe chronos for inmates on June 23, 2004. Joaquin Decl. ¶ 5, Ex. B. Doctors typically complete a comprehensive accommodation chrono (CDCR Form 7410) to authorize access to medical devices or other medically- necessary accommodations. Id. Chronos for medical accommodations must be approved by the chief medical officer or the health care manager before they become valid. Id.

19
20
21
22
23
24
25
26

Lee's 2004 memo concerning soft-shoe chronos states: "Effective immediately, all personal soft shoe chronos are hereby cancelled and no longer in effect. This does not apply to orthopedic shoes which are specially fitted to meet the inmate's medical podiatric needs. In instances in which soft soled shoes had been utilized to provide ankle support, those inmates should be referred to the medical clinic for an evaluation to determine if ankle braces, sleeves or straps are appropriate." Id. Ex. B. This memo has continuously been in effect since it was issued in 2004 and there have not been any other memos concerning soft-shoe

27
28

14

chronos to clarify or supersede it. <u>Id.</u> ¶ 6.

The memo making soft-shoe chronos no longer necessary has not been applied to inmates in the ASU. <u>Id.</u> ¶ 7. Inmates in the ASU with medical conditions requiring special shoes (including soft shoes) must be evaluated by a foot specialist before they will be issued a comprehensive accommodation chrono for special shoes. <u>Id.</u> The reason for this exception to the 2004 soft-shoe memo is that prison policies prohibit inmates in the ASU from having personal soft shoes because they may use the laces to hang themselves or make weapons. <u>Id.</u>

As Nguyen recalls, comprehensive accommodation chronos (such as a soft-shoe chrono) were issued after a two-step process when he worked at SVSP. Nguyen Decl. ¶ 5. First, he would write the comprehensive accommodation chrono based on his recommendations after examining an inmate-patient. <u>Id.</u> Second, the health case manager or chief medical officer would review the comprehensive accommodation chrono and approve or reject it. <u>Id.</u> At the time plaintiff requested a soft-shoe chrono, Nguyen believed that because plaintiff was in the ASU any soft-shoe chrono he wrote for him would be rejected unless it was supported by a foot specialist. <u>Id.</u>

Plaintiff's medical records show that plaintiff first complained to Nguyen of foot pain and requested a soft-shoe chrono when Nguyen saw Plaintiff on August 25,2005, two weeks after Nguyen started working at SVSP. Nguyen Decl. ¶ 6. At the time, it was Nguyen's understanding that only a podiatrist could authorize special shoes. <u>Id.</u> That same day, Nguyen responded to plaintiff's complaint about foot pain by completing a Health Care Services Physician Request for Services (CDCR Form 7243), in which he referred plaintiff for a podiatry consultation. <u>Id.</u> Nguyen noted in the request that the inmate stated that his foot hurt with his current shoe, but that an examination of his feet was

15

1  unremarkable and he did not believe a soft-shoe chrono was medically necessary.

2  Id. ¶ 6, Ex. R.

3  Plaintiff saw the podiatrist on October 24, 2005, who noted that plaintiff

4  had heel and arch pain and excessive pronation. Id. ¶ 7. Although Nguyen is not

5  a podiatrist, he understands pronation to refer to the position of the sole of the

6  foot. Id. The podiatrist ordered x-rays of both plaintiff's feet, which were

7  performed two days later on October 26, 2005. The x-rays showed that both feet

8  were normal and did not show any evidence of disease or injury. Id. The

9  podiatrist recommended a follow-up appointment in two months. Id., Ex. C-l.

10  Plaintiff had a follow-up appointment with the podiatrist two months later,

11  on December 12,2005. Id. ¶ 8. At that time, the podiatrist noted that the x-rays

12  of both feet were within normal limits, and that plaintiff had excessive pronation

13  of both feet. Id. The podiatrist also requested that plaintiff be rescheduled to the

14  podiatry clinic after his SHU (security housing unit) term to receive functional

15  orthotics. Id. Upon reviewing plaintiff's medical records, Nguyen understood

16  this to mean that the podiatrist did not recommend that plaintiff should have

17  orthotics until he was housed in the general population. Id. ¶ 8, Ex. C-2.

18  Plaintiff had another follow-up appointment with the podiatrist on March

19  6, 2006. Id. ¶ 9. At that time, the podiatrist again noted that the x-rays of both

20  feet were within normal limits and that plaintiff had excessive pronation of both

21  feet. Id. The podiatrist also recommended that plaintiff be allowed to wear his

22  personal soft shoes with orthotics to control pronation in both feet. Id. ¶ 9, Ex.

23  C-2. Nguyen saw plaintiff again on March 21, 2006 for shoulder pain and noted

24  in plaintiff's chart that plaintiff needed a soft-shoe chrono. Id. ¶ 10, Ex. D. It

25  was Nguyen's understanding that because he now had the expert opinion of the

26  podiatrist recommending soft shoes, Nguyen could now write a soft-shoe chrono

27

28  16

1   for plaintiff that would likely be approved by the health care manager or chief
2   medical officer. Id. ¶ 10.

3       On March 22,2006, the day after Nguyen saw plaintiff and noted that he
4   needed a soft-shoe chrono, Nguyen wrote plaintiff a soft-shoe chrono on a CDCR
5   Form 7410. Id. ¶ 11. In this chrono, Nguyen noted that plaintiff saw the
6   podiatrist on March 6, 2006 and that the podiatrist recommended personal soft
7   shoes with orthotics to control pronation of the feet. Id. The following day, on
8   March 23,2006, the soft-shoe chrono was approved. Id. Nguyen believes it was
9   approved because the expert opinion of the podiatrist justified the request for soft
10  shoes in the ASU. Id. ¶ 11, Ex. E.

11      Plaintiff's medical records show that during most of the period from
12  August 2005 through March 2006, he was prescribed pain medication by
13  Nguyen. Id. ¶ 12. Specifically, Nguyen alternately prescribed Naproxen or
14  Indomethacin, depending on which medication plaintiff said provided better pain
15  relief. Id. These are both non-steroidal anti-inflammatory drugs (NSAIDs),
16  which is a class of generalized pain relievers that includes medications like Advil
17  and Motrin that are sold over the counter. Id. Nguyen prescribed these pain
18  medications primarily to treat Plaintiff s frequent complaints of shoulder pain, but
19  this same type of medication would also be used to treat the kind of foot pain of
20  which plaintiff complained. Id. ¶ 12, Ex. F.

21      Under Nguyen's version of the facts, Nguyen was not deliberately
22  indifferent to plaintiff's foot pain. Nguyen referred plaintiff to a podiatrist on the
23  same day on which plaintiff first requested medical attention and a soft-show
24  chrono for foot pain; Nguyen prescribed plaintiff appropriate pain medication;
25  and Nguyen wrote plaintiff a soft-shoe chrono upon obtaining the expert opinion
26  of the podiatrist that plaintiff should be allowed to wear soft shoes to control
27
28                                      17

pronation of the feet. Nguyen did not disregard a known risk of serious harm to plaintiff's health by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837.

Plaintiff's contentions that Nguyen should have written the soft-shoe chrono immediately upon plaintiff's request, or that Nguyen should have called the podiatrist to influence his medical recommendation, do not compel a different conclusion. At best, plaintiff's contentions suggest that Nguyen was negligent because he should have done more; but that is not enough to establish deliberate indifference under § 1983. See id. at 835-36 & n.4. Plaintiff has set forth no evidence showing that Nguyen "intentionally den[ied] or delay[ed him] access to medical care." Estelle, 429 U.S. at 104-05. Nguyen is entitled to summary judgment as a matter of law. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986)

Nguyen is also entitled to qualified immunity from damages because the record shows that he acted under the reasonable belief that the opinion of a podiatrist was needed before plaintiff could be issued a soft-show chrono for the ASU. Even if Nguyen was mistaken, as plaintiff claims, Nguyen would be entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 202 (2001) (rule of qualified immunity protects all but the plainly incompetent or those who knowingly violate the law; defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation).

Plaintiff alleges that defendants Evans and Lee, SVSP's warden and health care manager, also were deliberately indifferent to his serious medical needs. Plaintiff specifically alleges that although he informed Evans and Lee that he was not getting a soft-shoe chrono because the doctors were relying on an outdated policy memo, Evans and Lee "failed to cure the situation." FAC ¶¶ 22, 32-33.

18

1   But plaintiff sets forth no evidence showing that the policy memo was outdated
2   or not in effect during the pertinent time period. Put simply, plaintiff sets forth
3   no evidence showing that there was a "situation" for Evans and/or Lee to "cure."
4   Cf. Farmer, 511 U.S. at 837 (deliberate indifference requires that prison official
5   know that prisoner faces a substantial risk of serious harm and that prison official
6   disregard that risk by failing to take reasonable steps to abate it). Evans and Lee
7   are entitled to summary judgment because there is no genuine issue for trial on
8   plaintiff's claim that Evans and/or Lee were deliberately indifferent to plaintiff's
9   serious medical needs. See Celotex Corp., 477 U.S. at 323.

10  At minimum, Evans and Lee are entitled to qualified immunity from
11  damages because reasonable prison officials could have believed that their
12  conduct was lawful under the circumstances. See Saucier, 533 U.S. at 205-06.
13  After all, plaintiff's medical record made clear that plaintiff received medical care
14  for his feet (including the medical care of a specialist) as soon as he complained
15  of feet pain in August 2005 and that the care was ongoing.

16  **CONCLUSION**

17  For the foregoing reasons, defendants' motion for dismissal/summary
18  judgment (docket # 65) is GRANTED.

19  The clerk shall enter judgment in favor of defendants, terminate all
20  pending motions as moot, and close the file.
21  SO ORDERED.
22  DATED: DEC 2 9 2009

    CHARLES R. BREYER
23  United States District Judge

27  G:\PRO-SE\CRB\CR.07\Harvey1.msj.wpd

28  19

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

QUILLIE L. HARVEY,

Plaintiff,

v.

ARNOLD SCHWARZENEGGER et al,

Defendant.
_____/

Case Number: CV07-01244 CRB

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 29, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Quillie L. Harvey H-28106
Salinas Valley State Prison
C-1-108
P.O. Box 1050
Soledad, CA 93960

Dated: December 29, 2009

Richard W. Wieking, Clerk

*Tracy Lucero*

By: Tracy Lucero, Deputy Clerk